UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

IN CHARLESTON

GARY DALE MOORE,

      Movant,

v.                                     CASE NO. 2:07-cr-00023
                                       CASE NO. 2:10-cv-00926

UNITED STATES OF AMERICA,

      Respondent.

PROPOSED FINDINGS AND RECOMMENDATION

The undersigned has reviewed the movant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (ECF Nos. 127 & 128) ("2255 Motion").  After careful consideration, the undersigned proposes that the presiding District Judge deny the same.

<u>Procedural History & Facts of the Case</u>

On October 25, 2007, the movant, Gary Dale Moore, pled guilty before the Honorable Joseph R. Goodwin, Chief United States District Judge, to being a felon in possession of one round of ammunition, in violation of 18 U.S.C. §§ 922 (g) (1) and 924 (a) (2).[1]  This charge constituted one count of the two count indictment that was filed against him on February 13, 2007.  ECF

_____

[1]

In the movant's plea agreement, he and the United States stipulated that the movant possessed one round of ammunition; however, no such stipulation was made as to the firearm recovered in his case.  The movant ultimately only pled guilty as to ammunition, omitting any reference to the firearm.  <u>See</u> Movant's Motion to Correct Judgment Order, ECF No. 102.

No. 1.  Count Two, which had been dismissed pursuant to the movant's plea agreement, ECF No. 89, charged him with forcibly resisting and interfering with a law enforcement officer engaged in the performance of his or her official duties, in violation of 18 U.S.C. § 111(a).  Represented by Ms. Jane Moran, the movant had pled guilty under a conditional plea agreement wherein he was allowed to preserve his right to appeal the denial of his motion to suppress.  The plea agreement also provided that the movant would face a mandatory minimum sentence of fifteen years if the Court were to find that he qualified as an armed career criminal under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e).  If the movant did not qualify as such, the plea agreement stated that he faced a maximum sentence of ten years.

A presentence investigation report ("PSR") was prepared prior to the movant's sentencing (ECF No. 112).  Reflecting the 2007 edition of the United States Sentencing Guidelines, the PSR, in pertinent part, concluded that the movant should be sentenced under the ACCA due to his two prior Ohio convictions for aggravated burglary, and his West Virginia conviction for jailbreaking/escape.  The movant also had four other adult convictions, including a 2001 Ohio conviction for failure to comply, in apparent violation of Ohio Revised Code Section 2921.33.

With regards to his jailbreaking/escape conviction, the movant had been charged on December 7, 1993, in Lincoln County Circuit

2

Court with, <u>inter alia</u>, jailbreaking/escape in violation of W. Va. Code § 61-5-10(b).  On March 15, 1995, the movant pled guilty to jailbreaking/escape in violation of W. Va. Code § 61-5-10.  That statute provides in pertinent part:

> **61-5-10** Person in custody of institutions or officers. Whoever escapes or attempts to escape by any means from the custody of a county sheriff, the director of the regional jail authority, an authorized representative of said persons, a law-enforcement officer, court bailiff, or from any institution, facility, or any alternative sentence confinement, by which he or she is lawfully confined, shall, if the custody or confinement is by virtue of a charge or conviction for a felony, be guilty of a felony, and, upon conviction thereof, shall be confined in the penitentiary for not more than five years[.]

The criminal complaint from the movant's jailbreaking/escape arrest describes the circumstances of his offense.  "The accused did escape from the custody of the Lincoln County Sheriff's Office by jumping from a two story window while having handcuffs on his hands and also an orange jumpsuit on."  (ECF No. 147, ex. 1 at 1).  The indictment on that charge alleged that the movant "committed the offense of 'jail breaking' in that he was then and there lawfully confined to the jail facility of Lincoln County and lawfully in the custody of the Lincoln County Sheriff's Department in the Lincoln County Courthouse . . . and did unlawfully and feloniously escape from said jail."  <u>Id.</u> at 3.  At his plea colloquy, the movant testified that he believed he was guilty of the offense of jailbreaking "'[c]ause I escaped . . . . I jumped out the window." ECF No. 159, Ex. 1 at 12.

3

In their sentencing memoranda for the instant offense, the United States concurred with the recommendations of the PSR, while the movant disagreed.  The movant argued that the Ohio aggravated burglary convictions could not serve as ACCA predicates because, while he was tried and convicted as an adult, he committed those offenses as a juvenile.  He further argued that the United States did not prove that the Ohio offenses were committed on occasions different from one another, and that he did not have sufficient information to determine which West Virginia statute he violated for his jailbreaking/escape.

Chief Judge Goodwin felt otherwise at the movant's sentencing on February 21, 2008, overruling the movant's objections.  With regards to the movant's jailbreaking/escape conviction, Chief Judge Goodwin stated that

> [t]he indictment to which the defendant pled guilty states that he was convicted of jail breaking in violation of 61-5-10 of the West Virginia Code. That's Chapter 61, Article 5, Section 10.  This statute provides that those who escape or attempt to escape from the custody of law enforcement or other authorities after being charged or convicted for a felony are guilty of a crime.  The crime of jail breaking is, therefore, the same as a crime of escape.

(ECF No. 110, 17-18).  Chief Judge Goodwin then relied upon two cases that preceded Begay v. United States, 553 U.S. 137 (2008), to determine that the movant's jailbreaking/escape conviction qualified as an ACCA predicate: United States v. Hairston, 71 F.3d 115, 118 (4th Cir. 1995) (any escape "inherently presents the

serious risk of physical harm to another") and <u>United States v. Mathias</u>, 482 F.3d 743, 747 (4th Cir. 2007) (defendant's Virginia escape conviction constitutes a "violent felony" under the ACCA), <u>rev'd</u>, 129 S. Ct. 989 (2009). Pursuant to the requirements of the ACCA, Chief Judge Goodwin then sentenced the movant to a fifteen year term of imprisonment to be followed by a three-year term of supervised release. (Amended Judgment in a Criminal Case, ECF No. 107, entered February 26, 2008). Without the ACCA enhancement, it appears to the undersigned that the movant's sentencing range under the Guidelines would have been 77-96 months, given his 14 criminal history points and, as calculated by Chief Judge Goodwin, his pre-ACCA total offense level of 21. <u>See</u> ECF No. 110 at 23.

On appeal, the movant argued that the district court erred in denying his motion to suppress evidence discovered during the execution of the fugitive arrest warrant served at the residence of a third party. He also contested Chief Judge Goodwin's finding that he qualified as an Armed Career Criminal. Specifically, with regards to the latter issue, he argued that the United States had failed to prove that his Ohio aggravated burglary convictions served as Armed Career Criminal predicates. The movant states, however, that Ms. Moran, who had remained his counsel on appeal, failed to raise a <u>Begay</u> argument regarding his jailbreaking/escape conviction. The movant notes that the <u>Begay</u> decision was issued by the Supreme Court approximately two months before his appellate

brief was filed with the Fourth Circuit.  He claims that he requested that Ms. Moran make a Begay argument with regards to the jailbreaking/escape predicate, but that she focused on his Ohio burglary convictions instead.

The Fourth Circuit ruled on January 26, 2009, upholding Chief Judge Goodwin.  See United States v. Moore, 309 Fed. Appx. 688 (2009).  The movant filed a petition for writ of certiorari with the Supreme Court on August 3, 2009, which was denied on October 5, 2009.  Ms. Moran did make a Begay argument in the movant's petition for certiori, although apparently such an argument had been defaulted because it had not been raised at the Fourth Circuit.

On July 19, 2010, the movant filed the instant 2255 motion. He alleges two grounds in support of his motion.  First, the movant alleges that his counsel was ineffective for failing to challenge on appeal his status as an Armed Career Criminal.  He contends that his counsel should have argued that his prior West Virginia conviction for jailbreaking/escape does not satisfy the current definition of "violent felony" in light of the Supreme Court's decision in Begay.  Second, the movant alleges that his counsel was ineffective for failing to recognize and argue that Amendment 709 of the United States Sentencing Guidelines precluded him from being sentenced as an Armed Career Criminal.

On June 1, 2011, the undersigned ordered the United States to

expand the record in the instant case with any procurable <u>Shepard</u>[2]-approved documents, including a transcript of the movant's March 15, 1995, plea colloquy. ECF No. 153. The United States needed technical assistance to transcribe the tape recording of that plea colloquy. <u>See</u> ECF No. 156. On August 8, 2011, the United States filed the March 15, 1995, plea colloquy transcript, pursuant to the aforementioned Order. ECF No. 159. It also filed a supplemental response to the movant's 2255 motion on August 3, 2011. ECF No. 158.

<u>Grounds for Relief</u>

- The movant argues that Ms. Moran provided ineffective assistance of counsel in dealing with the jailbreaking/escape predicate offense on appeal due to the fact that he is actually innocent of being an armed career criminal.

- The movant argues that his counsel was ineffective for failing to recognize and argue that, pursuant to Amendment 709 to United States Sentencing Guidelines § 4A1.2, effective November 1, 2007, his two Ohio burglary convictions could not be separated into two different offenses under the Guidelines because the sentences for those offenses were run concurrently.

<u>ANALYSIS</u>

The right to the effective assistance of counsel extends to a

---

[2] <u>Shepard v. United States</u>, 544 U.S. 13, 26 (2005).

criminal defendant's first appeal as of right.  <u>Evitts v. Lucey</u>, 469 U.S. 387, 396 (1985).

The Supreme Court addressed the right to effective assistance of counsel in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), in which the Court adopted a two-pronged test.  The first prong is competence; movant must show that the representation fell below an objective standard of reasonableness.  <u>Id.</u> at 687-91.  There is a strong presumption that the conduct of counsel was in the wide range of what is considered reasonable professional assistance, and a reviewing court must be highly deferential in scrutinizing the performance of counsel.  <u>Id.</u> at 688-89.

> In order to meet the first prong, movant must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.  The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance ... [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

<u>Id.</u> at 690.

The second prong is prejudice; "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  <u>Id.</u> at 694.  The court may determine the prejudice prong prior to considering the competency prong if it is easier to dispose of the claim on the ground of lack

of prejudice.  <u>Id.</u> at 697.

<u>Ground One: The Armed Career Criminal Act</u>

18 U.S.C. § 924(e) provides that

(1) In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).

(2) As used in this subsection--

***

(B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that--
    (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
    (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another[.]

How a prior offense is evaluated depends on how the particular statute is written. "Under th[e] categorical approach, the way in which a particular defendant violated the statute on the particular day in question is irrelevant; the only question is whether the statutory language proscribes conduct that involves violence when the offense is considered generically.  Where, however, a statute

broadly criminalizes conduct that could be 'generally committed' in multiple ways, some violent and some not, the categorical approach is inapplicable." <u>United States v. Bethea</u>, 603 F.3d 254, 256 (4th Cir. 2010) (internal citations omitted).   When the modified categorical approach applies, a court may determine whether a defendant's specific conduct qualifies as a crime of violence by looking to the terms of certain charging documents. <u>United States v. Diaz-Ibarra</u>, 522 F.3d 343, 348 (4th Cir. 2008).   In cases where a defendant's prior conviction arose from a guilty plea instead of a trial, a court's determination of whether the prior offense is a predicate "is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." <u>Shepard</u>, 544 U.S. at 26.   Police reports and complaint applications are not sufficient. <u>Id.</u> at 21-26.

Recent decisions from the Supreme Court and the Fourth Circuit have helped define the contours of what type of prior conviction qualifies as a predicate offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another" under the ACCA.

At issue in <u>Begay</u> were the defendant's dozen prior convictions in New Mexico for driving under the influence ("DUI").   In New Mexico, a defendant's fourth and other subsequent DUI convictions

are felonies punishable by a prison term of more than one year. The district judge sentenced Begay under the ACCA, finding that his DUI convictions involved conduct that presented a serious potential risk of physical injury to another.  The Supreme Court disagreed. While acknowledging the serious risks posed by drunk driving, the Court found that such criminal activity was too different from the other crimes listed in clause (ii).

> In our view, the provision's listed examples-burglary, arson, extortion, or crimes involving the use of explosives-illustrate the kinds of crimes that fall within the statute's scope.  Their presence indicates that the statute covers only similar crimes, rather than every crime that "presents a serious potential risk of physical injury to another." § 924(e)(2)(B)(ii).

Begay, 553 U.S. at 142.  The Court held that clause (ii) only covers "crimes that are roughly similar, in kind as well as in degree of risk posed, to the examples themselves."  Id. at 143. Begay's DUI convictions were therefore not ACCA predicates.

> [C]rimes involving intentional or purposeful conduct (as in burglary and arson) are different than DUI, a strict liability crime.  In both instances, the offender's prior crimes reveal a degree of callousness toward risk, but in the former instance they also show an increased likelihood that the offender is the kind of person who might deliberately point the gun and pull the trigger.

Id. at 146.

In Chambers v. United States, 129 S.Ct. 687 (2009), the Supreme Court further limited the reach of clause (ii) in determining that the Illinois offense of knowingly failing to report to a penal institution was not a violent felony under the

ACCA.  The Court noted that the offense of failing to report "would seem less likely to involve a risk of physical harm than the less passive, more aggressive behavior underlying an escape from custody," an offense contained in the same statutory subsection of the Illinois statute.  Id. at 691.  The Court held that the Illinois offense of failing to report does not involve "a serious potential risk of physical injury" to another person because a failure to report is more of an offense of "inaction." Id. at 692. It found it unlikely that a person who unlawfully fails to report would also call attention to himself by engaging in violent or unlawful conduct.  Id.  The Court also rejected the government's contention that a failure to report conviction demonstrates an especially strong aversion to being in custody, inasmuch as it found that the proper question, to which the answer was no, "is whether such an offender is significantly more likely than others to attack, or physically to resist, an apprehender, thereby producing a serious potential risk of physical injury."  Id. "These observations reemphasized Begay's earlier recognition that a court making a 'violent felony' assessment (or, as here, a 'crime of violence' assessment) should focus on whether the specific offense indicates that the offender is more likely to engage in such violence intentionally or purposefully." United States v. Jenkins, 631 F.3d 680, 684 (4th Cir. 2011).  Accordingly, Chambers requires that when "a statute prohibits both failure to report and

12

more traditional escapes, a court must use the modified-categorical approach to determine which of the two forms of conduct the defendant engaged in when determining whether his prior offense brings him within the ACCA's purview."  Bethea, 603 F.3d at 257.

Since the Begay and Chambers decisions, the Fourth Circuit has decided a series of cases concerning ACCA clause (ii) predicate offenses.  See Jenkins, 631 F.3d at 685 (for purposes of the Sentencing Guidelines,[3] because the Maryland offense of resisting arrest "cannot be committed negligently or recklessly, but must be committed intentionally, it qualifies as a 'crime of violence.'"); United States v. Peterson, 629 F.3d 432, 440 (4th Cir. 2011) (for purposes of the Sentencing Guidelines, "a North Carolina conviction for involuntary manslaughter does not 'otherwise involve[ ] conduct that presents a serious potential risk of physical injury to another'" due to the fact that it does not involve purposeful conduct); United States v. Hood, 628 F.3d 669, 672-3 (4th Cir. 2010) (in light of Begay, the defendant's prior conviction for felony possession of a sawed-off shotgun constituted a predicate "crime of violence" for purposes of the Sentencing Guidelines); United States v. Clay, 627 F.3d 959, 969 (4th Cir. 2010) (for

---

[3]  "The ACCA defines 'violent felony' in a manner substantively identical to the definition of a "crime of violence" in § 4B1.2 [of the Sentencing Guidelines]."  United States v. Jarmon, 596 F.3d 228, 231 n.* (4th Cir. 2010)  The Fourth Circuit has "therefore held that precedents evaluating the ACCA apply with equal force to U.S.S.G. § 4B1.2."  Id. (internal citation omitted).

purposes of the Sentencing Guidelines, a generic crime of walk-away escape from an unsecured facility does not qualify as a crime of violence; "[U]nlike the prototypical escape scenario in which an individual must overcome physical barriers, a walkaway escape involves simply leav[ing] a facility without removing a physical restraint, without breaking a lock on a door, without climbing over a prison wall or security fence or without otherwise breaking through any other form of security designed to keep them put. Moreover, an individual who simply walks away from custody was just as unlikely as an individual who fails to report to custody to call attention to his whereabouts by simultaneously engaging in additional violent and unlawful conduct.") (internal citations and quotations omitted); Bethea, 603 F.3d at 259-60 (defendant's South Carolina escape conviction not an ACCA predicate as it was unclear whether he failed to report or unlawfully left physical custody); Jarmon, 596 F.3d at 231-33 (for purposes of the Sentencing Guidelines, larceny from the person is a violent offense); United States v. Rivers, 595 F.3d 558, 565 (4th Cir. 2010) (South Carolina's blue light statute, criminalizing failure to stop for a blue light, did not contain the requisite intent to bring it within the scope of a "violent felony" as defined by the ACCA); United States v. White, 571 F.3d 365, 371-72 (4th Cir. 2009) (prior North Carolina offense of conspiracy to commit robbery with a dangerous weapon constituted a violent felony under the ACCA); United States

14

v. Thornton, 554 F.3d 443, 449 (4th Cir. 2009) (Virginia crime of carnal knowledge of a minor not an ACCA predicate violent felony, due to the fact that the degree of risk was unlike the enumerated crimes in clause (ii) because as it did not create the "immediate, serious, and foreseeable physical risks that arise concurrently with the commission of the [crime]" and because the offense was not similar "in kind" to the enumerated offenses, as it was not purposeful, violent, and aggressive.); United States v. Seay, 553 F.3d 732, 739 (4th Cir. 2009) (for purposes of the Sentencing Guidelines, the defendant's North Carolina conviction for felony stalking was a crime of violence because "conduct that deliberately places a reasonable person in fear of bodily harm is purposeful and violent, as well as aggressive," and because it "create[s] significant risks of bodily injury or confrontation that might result in bodily injury.").

Also pertinent to this case is United States v. Nichols, 563 F. Supp.2d 631 (S.D. W. Va. 2008) (Goodwin, C.J.), which involved the West Virginia prison escape statute, W. Va. Code § 61-5-12a. That statute provided that "[a]ny person who escapes from the custody of the commissioner of corrections, regardless of where such person is confined or where such escape occurs, is guilty of a felony, and, upon conviction thereof, shall be imprisoned in the penitentiary not more than five years." While Chief Judge Goodwin found that escape presents a serious potential risk of physical

injury to others, he concluded that the crime of escape is not roughly similar to the offenses enumerated in clause (ii).

> Unlike the enumerated crimes, the definition of escape does not necessitate a trespass or other infringement against persons or property. Like DUI, escape is more akin to a public order crime because it generally victimizes society rather than individuals. Thus, the target of an escapee's wrong is unlike the target of the listed offenses, which primarily infringe the personal or property rights of others. Similarly, escape does not have as its purpose the imposition of harm against other individuals . . . . West Virginia's definition of escape, moreover, does not "insist on purposeful, violent, and aggressive conduct" as required by Begay. Although some offenders prosecuted for escape act purposefully, the statute itself, like the DUI statute in Begay, imposes strict liability . . . . The degree of risk posed by escape is also unlike the risk presented by the listed offenses. First, many escape cases are based on omissions, rather than actions, by the offender. In such cases, the offense conduct will not involve violence or aggression, and there will be a much less significant risk of violence arising from subsequent apprehension. Second, the degree of risk associated with escape is generally thought to arise from the possibility of interruption or apprehension rather than from the act of escape itself. This danger differs substantially from that involved with the listed offenses, which all require acts of aggression at their inception. Therefore, the degree of risk posed by escape is significantly more attenuated than the risks inherent in burglary of a dwelling, arson, extortion, and crimes involving the use of explosives.

Id. at 637-38.

In June of this year, the Supreme Court decided Skyes v. United States, 131 S. Ct. 2267 (2011). In that decision, the defendant's prior conviction under Indiana law for knowing or intentional flight from a law enforcement officer by vehicle was held to be an ACCA predicate because "[s]erious and substantial

risks are an inherent part of vehicle flight," which is not a strict-liability, negligence, or recklessness crime and is, as a categorical matter, similar in risk to the crimes listed in the ACCA's residual clause.  Id. at 2276.

The movant argues that Ms. Moran provided ineffective assistance of counsel in dealing with the jailbreaking/escape predicate offense on appeal due to the fact that he is actually innocent of being an armed career criminal.  Without this conviction counting as an ACCA predicate and but for Ms. Moran's alleged error, he claims that he would not have qualified for the ACCA mandatory minimum sentence of 15 years and would have instead faced a lesser sentence.

Specifically, the movant claims that the Begay decision, had it been raised by his counsel on appeal, would have led to the reversal of his sentence under the ACCA.  The movant observes that at his sentencing, Chief Judge Goodwin equated jailbreaking with escape.  However, following Begay, Chief Judge Goodwin held in Nichols that escape was a non-violent felony for the purposes of the ACCA.  Therefore, the movant concludes that his jailbreaking/escape conviction cannot serve as an ACCA predicate.

The United States disagrees.  As W. Va. Code § 61-5-10 includes both traditional escape and failure to report, it notes that Chambers requires that the modified categorical approach method be used to determine whether the movant's conviction can be

17

considered a predicate ACCA violent felony.  The United States then argues that the materials from the movant's jailbreaking/escape case in the Circuit Court of Lincoln County demonstrate that his jailbreaking/escape case clearly involved purposeful violent conduct.  In its supplemental response, the United States argues that the <u>Skyes</u> decision further supports its claim that the movant's jailbreaking/escape is an ACCA predicate.

The movant makes various arguments in his reply, some of which are not pertinent.  He claims that the categorical approach is applicable to his case, as it contains only one prescribed behavior, escape.  The movant also reiterates that <u>Nichols</u> is applicable.

The United States correctly argues that the modified categorical approach applies in the instant case, as the statute that the movant was convicted under provides for both types of escape.

Due to the movant's admission at his plea colloquy that he escaped by jumping out a window, the Court has sufficient detail to determine whether the movant "overc[a]me physical barriers" or "simply [left] a facility without removing a physical restraint, without breaking a lock on a door, without climbing over a prison wall or security fence or without otherwise breaking through any other form of security designed to keep them put." <u>Clay</u>, 627 F.3d at 969.  The movant forcibly left custody by overcoming the

18

physical barrier of the jailhouse window.  His conviction for violating W. Va. Code § 61-5-10 is a violent felony under the ACCA.

Therefore, the failure of movant's counsel to raise this issue on appeal was not an omission that was outside the wide range of professionally competent assistance, and the movant is actually guilty of being an armed career criminal.

The undersigned proposes that the presiding District Judge **FIND** as follows:

A) On appeal, the representation of Movant's counsel, Ms. Moran, did not fall below an objective standard of reasonableness; and

B) There is no prejudice to the movant as the result of the movant's appeal would not have been different.

Ground Two: Amendment 709

The movant further alleges that his counsel was ineffective for failing to recognize and argue that, pursuant to Amendment 709 to United States Sentencing Guidelines § 4A1.2 , effective November 1, 2007, his two Ohio burglary convictions could not be separated into two different offenses under the Guidelines because the sentences for those offenses ran concurrently.

The United States, while admitting that the movant's argument might be applicable if he had not been sentenced under the ACCA, argues that Amendment 709 is irrelevant here inasmuch as the movant was sentenced under § 4B1.4, the section applicable to the ACCA, and not § 4A1.2.

19

> The amendments to USSG §§4A1.1 and 4A1.2 [effected by Amendment 709] do not purport to alter the section of the Guidelines dealing specifically with the sentencing of armed career criminals, let alone the ACCA. Indeed, such an importation would be inappropriate given the different schemes for calculating criminal history under the Guidelines and for determining armed career criminal status under the ACCA . . . . [E]ven assuming that the Sentencing Commission had for some reason intended to alter the manner in which the ACCA is interpreted, the Commission cannot, by changing the Guidelines, alter a statute passed by Congress.

United States v. Bailey, 264 Fed. App'x 480, 483-84 (6th Cir. February 14, 2008), cert. denied, 554 U.S. 909. See also United States v. Taylor, 301 Fed. App'x 508, 521 (6th Cir. 2008) (rejecting defendant's argument that "the standard in the Sentencing Guidelines for computing a defendant's criminal history category should also be applied in determining whether there are three separate convictions under the ACCA."); United States v. Maxey, 989 F.2d 303, 307, 308 (9th Cir. 1993) ("case law applying the related offense provisions of [USSG] section 4A1.2(a)(2) 'ha[s] nothing to do' with sentencing a defendant convicted under section 924(e)" and "[t]he Guidelines do not purport to determine whether section 924(e) applies.") (internal citation omitted).

The undersigned proposes that the presiding District Judge **FIND** that the movant's counsel was not ineffective due to her failure to raise Amendment 709. As the United States correctly argues, Amendment 709 would have no impact on the movant's sentence, as it is inapplicable to sentences issued pursuant to the ACCA.

RECOMMENDATION

It is respectfully **RECOMMENDED** that the Movant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (ECF No. 127) be **DENIED**.

The parties are notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(c) of the Federal Rules of Criminal Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United

21

States v. Schronce, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties and Judge Copenhaver.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to Movant, and to transmit it to counsel of record.

ENTER:    September 13, 2011

_Mary E. Stanley_
Mary E. Stanley
United States Magistrate Judge

22